[No. 6348. Decided November 26, 1906.]

ANNA HANSTAD, *a Minor, by Her Guardian Ad Litem,*
*W. A. Larsen, Respondent,* v. CANADIAN PACIFIC
RAILWAY COMPANY, *Appellant.*[1]

TRIAL—VERDICT. The verdict of a jury cannot be assailed on the
ground that juries are inclined to be prejudiced in cases between in-
dividuals and corporations.

EVIDENCE—EXPERTS. Hypothetical questions may properly be
based upon the testimony of the party proposing them.

TRIAL—MISCONDUCT OF ATTORNEY. It is prejudicial error for coun-
sel to comment in argument to the jury upon matters eliminated
from the trial by the rulings of the court, where such argument was
duly objected to at the time, with request that it be withdrawn from
the jury, and where the court refused such request and subsequently
refused to give properly requested instructions to disregard the same.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered February 10, 1906, upon the
verdict of a jury rendered in favor of the plaintiff, in an
action by a minor for injuries to herself and for the death of
her mother, sustained by contracting a contagious disease
while on a railway train. Reversed.

*Thomas B. Hardin (Bogle, Hardin & Spooner,* of coun-
sel), for appellant.

*Martin J. Lund (Walter S. Fulton,* of counsel), for re-
spondent.

DUNBAR, J.—Two actions were brought by Anna Han-
stad, a minor, by her guardian *ad litem,* W. A. Larsen, who
sued to recover for the death of her mother, Maret Hanstad,
in one case, and in the other for alleged injuries to herself.
Under a stipulation between the parties these cases were
tried together, as they arose out of the same state of facts.

[1]Reported in 87 Pac. 832.

By a subsequent stipulation they are presented to this court in the same briefs.

We will not attempt to set out the complaint verbatim, but the substance of the allegations is, that by virtue of a ticket purchased from the agent of the defendant, the mother of respondent was entitled to be carried as a passenger for hire over its said railway and on its cars and train; that on or about the 22d day of April, 1904, said minor's mother boarded defendant's train, at the city of Halifax, to be transported as its passenger for hire to Seattle, Washington; that she was duly received by defendant as its passenger for hire; that the defendant failed, neglected, and refused to furnish the minor's mother with a clean and proper car and conveyance in which to make said journey, but compelled her to ride in a dirty and unclean car which contained the germs and bacteria of a certain contagious and infectious disease, known as scarlet fever or malignant measles; that the defendant carelessly and negligently permitted the said car to be overcrowded with passengers, and neglected to have the car properly ventilated, and failed and neglected to keep said car clean and properly heated during said journey; that on the second day of said journey several of the passengers, traveling in the same car with the minor's mother, became sick with said scarlet fever or malignant measles, being a contagious and infectious disease, and the defendant negligently and carelessly allowed said sick passengers, suffering with said contagious and infectious disease, to remain in the same car with the minor's mother and in close proximity to her, and carelessly failed and neglected to furnish her with any other car, and negligently failed and neglected to take any means to prevent the spreading of said disease to the minor's mother; that thereby the disease was communicated to the minor's mother; that she became violently sick from said disease; that the defendant negligently and carelessly allowed and suffered her to remain for one whole day in said car without any attendance or assistance; that upon the ar-

rival of the train at Winnipeg, she was removed to a pest house, where she died from said disease, within a few days; that the defendant negligently and carelessly failed and neglected to render her any assistance after she became sick with said disease, and while she was a passenger on its train, and failed and neglected to remove her from the train for care and medical attendance until after she had become delirious and unconscious from pain and suffering; that it was well known to the defendant that the car in which she was directed to ride, and in which she did ride, was dirty, overcrowded, infected with said contagious and infectious disease, and improperly heated and ventilated, and other allegations of negligence which it is not necessary to reproduce here; that the said minor is three years of age, the illegitimate daughter of said Maret Hanstad, and was wholly dependent upon her mother for her support and maintenance, care and education, and by reason of the death of her said mother was damaged in the sum of $25,000. The allegations of circumstances and negligence in the other case were the same.

The answer of the defendant was substantially a denial of the allegations of the complaint. Appellant's contention was that the disease was measles, and not contracted upon its train by either respondent or her mother; that, even if the disease was scarlet fever, it was not contracted by any negligence of appellant, and that where and how it was contracted was unknown and not susceptible of proof. Upon these issues the case went to trial, and judgment was rendered in favor of the plaintiff for the loss of the mother in the sum of $9,000, and for injuries to herself in the sum of $6,000. On motion for a new trial, the judgment was allowed to stand upon the remission by the plaintiff of the sum of $3,000 of the judgment rendered in favor of the plaintiff for the loss of the mother. From this judgment this appeal is prosecuted.

It is earnestly urged by counsel for appellant that no negligence on its part was proven, and that the judgment should

be reversed and the cause dismissed for that reason. From a careful investigation of the long record which is presented in this case, an investigation which has occupied several days, we are unable to say that there was no testimony offered tending to show negligence on the part of the appellant. On the contrary, it appears to us that there was competent testimony which, if believed by the jury, would warrant a finding of negligence. The testimony is so voluminous, the trial of the cause having consumed ten days, that an intelligent review of it cannot be made within the limits of time and space appropriately accorded to an opinion, and as the whole of the testimony cannot be reviewed, we will not attempt a review of any of it. But the condition of the cars, the treatment of the passengers by appellant's agents, the time when the disease was contracted, the character of the disease, etc., were all questions upon which conflicting testimony was offered, and questions upon which the jury had a right to pass judgment.

We note the contention of appellant that juries are prejudiced in cases of this character, and not inclined to do justice between individuals and corporations. But, if there is any force in this contention at all, it is an argument against our constitution and statutes. The jury is a co-ordinate branch of the judiciary; its duties are defined and prescribed by law, and the appellate court cannot enter into an investigation of the trial of a cause upon the assumption that the jury has been remiss in its duty. If such is unfortunately the fact, the remedy is in a change of the fundamental law.

The hypothetical questions so strenuously objected to by appellant were based upon the testimony of respondent's witnesses, and the objections to them were properly overruled.

Without particularizing, we have been unable to find any prejudicial error in the admission or rejection of testimony, or in giving or refusing to give instructions, with one exception which we will hereafter notice. In our judgment,

the instructions given by the court clearly and fairly stated the law, and the instructions proposed by the appellant and refused by the court, with the exception above mentioned, had either been given in substance or should not have been given. In addition to this, the instructions tendered were so elaborate and so involved that, if they had been given as asked, they would have served to confuse rather than enlighten.

It is contended, however, that the appellant was deprived of a fair trial by the course of conduct pursued by respondent's counsel during the trial of the cause; that he so framed his questions as to assume the existence of facts which had neither been admitted nor proved; that on cross-examination he constantly interrupted defendant's witnesses before they had finished answering his questions, thereby embarrassing them and preventing the elicitation of the truth, and that, by constant insinuation concerning the motives of the witnesses for the appellant, he prejudiced the jury against the appellant and its cause. A reading of the record forces the conviction upon our minds that this contention is not altogether groundless, and it is unfortunate that trial courts are not more strict in enforcing professional conduct on the part of attorneys, and in protecting witnesses from unprovoked assaults. It might be, however, considering the heat of contest, that we would not feel like reversing this judgment on any specified charge, alone, had not the counsel gone further and insisted upon commenting, in his argument to the jury, upon matters which had already been eliminated from the trial and from the consideration of the jury by the rulings of the court; these cases having been tried before a stipulation was entered into in writing, to the effect that either party, at this or any retrial of the cases, might read in evidence any part of the testimony taken at the first hearing and transcribed by the stenographer, subject to the objections then made, and with the same effect as though the particular witness were testifying on the stand again.

At the first trial certain evidence was offered by respondent and received by the court, and at this last trial it was again offered by respondent and excluded by the court upon the objection of the appellant, as immaterial and irrelevant. At the first trial, after this evidence had been received, appellant introduced testimony of one J. F. Bissell, to explain the matter which was claimed to be irrelevant, and to rebut any improper inferences therefrom. Appellant also introduced testimony by Bissell as to other relevant and distinct facts. At the last trial, appellant again introduced the evidence of Bissell as to these facts, which he claimed to be relevant, by reading Bissell's testimony under the stipulation. When appellant had read what he deemed was material of Bissell's testimony, and declined to read the remainder which had been introduced on the former trial and had been excluded at this trial on his objection, respondent's counsel insisted on having all the testimony read to the jury, and a long discussion ensued between the counsel as to the materiality of the testimony which appellant refused to read, the counsel for respondent claiming that it was unfair to read a portion of the testimony and refuse to read the balance. The court suggested to counsel that they proceed with other testimony and he would examine the testimony over which the dispute arose, and determine whether or not it was material. Upon the coming in of court the next morning, the court announced that it had examined the testimony and it was not material to this issue, and overruled the respondent's objection to its omission by appellant's counsel. The cause proceeded without reference to this matter, until counsel for the respondent addressed the jury and, during his opening argument, said to the jury, referring to the portion of the testimony of J. F. Bissell which Mr. Hardin had declined to read:

"And why, gentlemen, will he attempt to read in evidence here a portion of the witness' evidence and refuse to put in the rest, even the cross-examination of the witness? Mr.

Hardin: I object to that statement— Mr. Fulton: If he is desiring fairness— Mr. Hardin: Upon the ground that it is an improper statement to make to this jury, in view of the fact that the court has ruled that I was right in so doing, and that the evidence was immaterial. Mr. Fulton: I have a right to comment on the evidence. The Court: The exception will be noted. Mr. Hardin: I ask the court to instruct the jury that counsel has no right to make that statement. Mr. Fulton: Under the law and the practice— Mr. Hardin: One moment. I request the court to instruct the jury that this is an improper statement and that they should disregard it. The Court: I will consider it in my instructions. Mr. Fulton: I say, gentlemen, if he is desiring fair play, and if he is actuated by a spirit of fairness, that fairness which he talked about trying to show, and you have not so much as heard me use the word once—he will say, because I do not know the meaning of it. He was just about to write that down, was not he, and he desisted. I knew he was—it would be just like him to say it. Mr. Hardin: I was."

In order to impress upon the minds of the jury that this was an improper and prejudicial statement by the counsel for the respondent, counsel for the appellant prepared and submitted to the court the following instruction:

"I further instruct you, gentlemen, that whenever evidence is offered by either side and rejected or excluded by the court, it is so rejected or excluded because it is improper for the hearing or consideration of the jury, either because it is of such a nature that it would serve to confuse the issues rather than throw light upon them, or for some other valid and proper reason. Therefore I instruct you that you will disregard any statement made in your presence concerning any evidence which has been offered and rejected by the court in this case, and that you will not allow your minds or verdict to be affected thereby in any way or to any extent."

The court failed to consider this question, which he had said he would consider in his instructions to the jury, and refused a proper instruction on that subject when it was offered by the appellant. It is needless to say that the comment made by counsel for respondent upon this matter was

altogether out of order, after it had been passed upon by the court. If a practice of this kind were to be tolerated, the trial of a cause would be conducted outside of and beyond the control of the court, and disorder and confusion would be interjected which would prevent the consideration of the cause by the jury under the law as announced by the court. In this case, considering the language which was used by the respective counsel in their heated controversy over this question, the jury might have well concluded, notwithstanding the ruling of the court on the admissibility of the testimony and the statement that it would consider the proposition in its instruction to the jury, that, having failed to so instruct, the comments made by the counsel for respondent were justified and met with its approval.

The amount of the judgment is questioned by the appellant, but as the verdict of the jury on this question on a new trial cannot be foretold, we will express no opinion on that point in the case.

We are exceedingly loath to reverse a cause involving so much expense and delay as a retrial of this cause will, but under the record as presented it may fairly be presumed that the rights of the appellant were prejudiced, and it therefore becomes our duty to reverse the judgment, with instructions to grant a new trial.

CROW, FULLERTON, and HADLEY, JJ., concur.

ROOT, J., concurs in the result.

MOUNT, C. J. and RUDKIN, J., took no part.