[No. 8204. Department One. November 22, 1909.]

HARRY M. DUNKIN, *Respondent*, v. THE CITY OF HOQUIAM, *Appellant*.[1]

MUNICIPAL CORPORATIONS—DEFECT IN STREETS—COMPLAINT. In an action against a city for personal injuries sustained in running upon an obstruction in a street, the complaint need not state what officer was negligent.

DAMAGES—PLEADING—COMPLAINT. In an action for personal injuries, the complaint is sufficiently definite where it alleges that plaintiff's right knee was "skinned and bruised."

APPEAL—HARMLESS ERROR—MUNICIPAL CORPORATIONS—CLAIMS—LIMIT OF AMOUNT. In an action for personal injuries alleged in the complaint at $26,230, after the filing of a claim against a city for only $10,000, it is not prejudicial error to refuse to strike out all claims in excess of $10,000, where the verdict was for the sum of $7,500.

MUNICIPAL CORPORATIONS—STREETS—OBSTRUCTIONS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE. In an action by a bicyclist, against a city for personal injuries sustained by running against an obstruction in the street, the negligence of the city and the contributory negligence of the plaintiff is for the jury, where it appears that piles of soft mud, two feet high, from the construction of a sewer, were allowed to remain in a street for three days and were dangerous to all traveling in vehicles, that the night was dark and there were no lights or barriers, and the plaintiff, who was infirm, had no light on his bicycle.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $7,500 for personal injuries is not excessive where it appears that the plaintiff, twenty-nine years of age, with a hand that had been broken and which was nearly normal, and who had been subjected to an operation closing the lower bowels and making an artificial anus in his side, under partial control, was able to do light work, and earned

[1]Reported in 105 Pac. 149.

$2.50 a day grinding knives in a planing mill, and by reason of a fall from his bicycle, the knuckles of his hand were rebroken, and the injury made permanent, his other trouble increased, the bowel protruding and getting beyond all control, causing great pain and suffering, and disabling him from performing work of any kind, and that the injury will increase as time progresses.

EVIDENCE—PERSONAL INJURIES—PHYSICAL EXHIBITIONS. A verdict for personal injuries will not be reversed for permitting the injured portions of the body to be exhibited to the jury on the ground that it enlisted their sympathy and was indecent.

DAMAGES—EVIDENCE—ADMISSIBILITY. In an action for permanent personal injuries, resulting in total disability, by one who was infirm, but who was earning $2.50 a day before the accident, it is proper to exclude papers offered in evidence to show that the plaintiff was drawing a pension for total disability from injuries received in the service of the government, where the only identification of the papers was the statement of the witness that he received them in the mail, and believed them to be the original papers.

SAME—EVIDENCE—REMOTENESS. Such papers are inadmissible where they relate to a time eight years before the accident, as they are too remote.

SAME—HEARSAY. The certificate of a physician as to a total disability, made in a pension matter, is inadmissible to show the disability, as it is hearsay.

EVIDENCE—OPINIONS. Hypothetical questions based upon facts which the evidence tended to prove are admissible.

TRIAL—PHYSICAL EXAMINATION. It is not error to refuse to permit a physical examination of the plaintiff, during the trial of a personal injury case, where plaintiff was examined before the trial by physicians appointed by the court.

DAMAGES—EVIDENCE—MATERIALITY. In an action for personal injuries sustained by a person who was infirm from a previous disability, the cause of the previous difficulty and advice thereon is immaterial.

TRIAL—MISCONDUCT OF JUDGE. Comment by the court in giving reasons for ruling on objections to the evidence is not unlawful comment thereon in violation of the constitution.

NEGLIGENCE — CONTRIBUTORY NEGLIGENCE—INTOXICATION—INSTRUCTIONS. Upon an issue as to plaintiff's contributory negligence, it is not error to refuse to instruct the jury as to the effect of plaintiff's intoxication, where the only evidence on that subject was that of a witness who saw him "about half jagged" four or five hours before the accident, and who did not know whether he was drunk or not.

Appeal from a judgment of the superior court for Che-
halis county, Irwin, J., entered April 15, 1909, upon the
verdict of a jury rendered in favor of the plaintiff, for per-
sonal injuries sustained by a bicyclist through an obstruc-
tion in a street.   Affirmed.

*James P. H. Callahan, E. E. Boner,* and *Sidney Moor
Heath,* for appellant.

*W. H. Abel* and *Morgan & Brewer,* for respondent.

Gose, J.—This is a suit to recover damages for personal
injuries.  From a verdict and judgment against the city it
has appealed.

The complaint states, that the appellant is a municipal
corporation of the second class; that Second street is one of
its principal streets and is planked for a width of twenty
feet; that on September 24, 1908, at 9:30 o'clock in the
evening, the street was obstructed by a ridge of soft mud,
two feet in height and four to six feet in width, extending the
full width of the street; that the city had notice of the ob-
struction, and that there were no lights or guards to indicate
the danger or to protect against it; that at such time the
respondent, whilst riding a bicycle at a slow rate of speed,
ran into the obstruction and was thrown violently from his
wheel onto the planking upon the street, sustaining great
and permanent injuries.   The complaint further states, that
prior thereto the respondent had sustained an injury to his
left hand, breaking certain bones, which had about united
and recovered; that by reason of the fall the bones were re-
broken; that prior to the accident the respondent contracted
yellow fever; that as a result of the disease he had been sub-
jected to an operation, whereby an opening had been made
in his side from which a small portion of the intestine pro-
jected; that he was in good health except as to the protrud-
ing intestine which, from the violence of the fall, was torn
from the abdominal wall, causing a further prolapse, and

4—56 Wash.

causing great pain and suffering; that the respondent will never be able to work, and that his right knee was skinned and bruised. The presentation of a claim for $10,000 was also alleged. Damages were demanded in the sum of $26,230.

A motion was interposed to require the respondent to state what officer had been negligent, to state whether the injury to the knee was the cause of the pain and suffering, to require the complaint to be made more definite and certain in other respects, and to strike it as an entirety. The motion being denied, a demurrer was filed and overruled. The answer joined issue upon all the material matters set forth in the complaint except the presentation of the claim to the city for $10,000, and alleged affirmatively, (1) that the accident was the result of the respondent's negligence; (2) that the claim sued upon was not presented to the city. The reply joined issue upon the new matter, and the case proceeded to trial and judgment.

There was no error in denying the appellant's motion to make the complaint more definite and certain. The respondent was not required to allege the particular officer whose neglect caused the injury. The negligence, if any, was that of the city. The allegation that the respondent received an injury to his right knee, that it was "skinned and bruised," was sufficiently definite.

The appellant is a city of the second class. Section 36, page 674, of the Laws of 1907, provides that all claims for damages against the city must be filed with the city clerk, and that no action shall be prosecuted against the city for any claim for damages until the same has been presented to the city council. It is admitted that the respondent, in due time, filed his claim with the city clerk for damages in the sum of $10,000. The motion sought to strike from the complaint the averment of damages in excess of that sum. There was no error in denying the motion in this respect. The verdict was for $7,500. It seems to be conceded that the error, if any, would have been cured had the court directed the

jury that the recovery was limited to $10,000. The question is purely an abstract one in view of the record. The ultimate fact to be determined by the jury was the amount of damages sustained by the respondent. The amount claimed would not change the nature of the testimony, nor influence the verdict.

A motion for nonsuit was interposed at the close of respondent's case, the denial of which is assigned as error. The evidence tended to show that, a few days before the accident, a property owner had obtained the permission of the street commissioner to dig a trench across the street at the place where the accident occurred, for the purpose of laying a sewer pipe; that the trench was dug; that there was a planked way used by the traveling public about twenty feet in width; that across the entire street there was loose dirt or mud taken from the trench, two feet or more in height and about four feet in width; that the street remained in this condition for about three days without a light or barrier; that about 9:30 in the evening the respondent was riding home on his bicycle, without a light, at reasonable speed; that the night was dark and the nearest city light was a half block distant from the obstruction; that the street was one of the leading streets of the city; that he was riding upon the planked way; that when his wheel came in contact with the obstruction he was thrown over the handle bars and onto the planking and sustained a serious injury. The evidence showed that the dirt had been there for about three days before the accident happened. The question of the contributory negligence of the respondent and whether the city in the exercise of reasonable care should have known of the obstruction were for the jury to determine. There was abundant evidence that the obstruction was of such character as to be dangerous to all traveling in vehicles. It is urged that the admitted physical infirmities of the respondent made it negligence on his part to ride a bicycle in the nighttime. Streets are not maintained solely for the young and

strong, and we cannot announce as a rule of law that he was guilty of such negligence as would preclude a recovery. Nor can we upon the facts declare the law to be that the riding of a bicycle without a lantern was an act of negligence.

It is next urged that a new trial should have been granted because the verdict is excessive. The evidence of the respondent tended to show that, in 1900, he contracted the yellow fever, which resulted in the closing of the lower bowels; that since that time he has had an artificial anus which he could partially control; that he is twenty-nine years of age; that before the injury he was able to do light work, and that he had been earning $2.50 per day grinding knives in a planing mill until he received the injury to his hand, about five weeks preceding the injury complained of; that his hand was nearly normal at the time of the accident; that before the injury, the bowel projected from the side not to exceed an inch, and that he was free from pain; that when he got home, a short time after sustaining the injury, the artificial anus was bleeding; that it caused him constant pain and suffering; that he has no control over it; that he cannot perform any kind of labor; that the knuckles of the forefinger were rebroken; and that his injury is not only permanent, but that his condition is pitiable in the extreme. The testimony of Dr. Harrison shows that he examined the respondent in January, 1901; that the artificial anus was then in good condition, the projection of the bowel being about one-twelfth of an inch; that he next examined him about two years before the trial, his condition then being about the same as when he made the former examination, and that he was then in good health; that he examined him at the time of the trial and found that seven or eight inches of the lining of the bowel protruded from the side; that he had no control over the bowel; that he was not able to do any kind of work; that he was in constant pain, and that the injury will increase as time progresses. Upon this evidence it seems certain that the jury did not award excessive damages.

The court permitted respondent to twice exhibit the injured part to the jury. This is urged as error upon two grounds, (1) that it had a tendency to enlist the sympathy of the jury, and (2) that it was indecent. Upon the first contention we assume that, had the injury complained of been a broken leg or arm, the contention would not be tenable. The fact that the injury occurred to some other part of the body would not change the rule of evidence. We apprehend that no court would permit the introduction of indecent evidence, unless it was so connected with the *res gestae* as to become necessary to the administration of justice. Indecency depends upon the purpose of the utterance or act.

"What we are to conclude, then, since the process of investigating the truth in courts of justice is both an indispensable and a dignified function of life, is that no utterances or acts called for in evidence in that process are to be prohibited because under other circumstances they might be characterized by indecency. In other words, the general policy of discountenancing indecency does not extend to the exclusion of evidence in a court of justice." 3 Wigmore, Evidence, § 2180.

Upon the cross-examination of respondent, he was asked if he was not drawing a pension for total disability at the time of receiving the injury. The court sustained an objection to this question, which ruling is said to have been error. No authorities are cited in support of its relevancy. We do not understand that the appellant at the trial sought to prove that the respondent was suffering from a total disability before the accident, but rather that owing to his physical condition it was negligence for him to have ridden a bicycle in the dark without a lantern, and that his ailment was not increased by reason of the accident. The respondent, as we have stated, testified that up to a short time preceding the injury he was earning $2.50 a day grinding knives in a mill. This the appellant not only did not attempt to disprove, but corroborated by the testimony of the foreman of the mill. The appellant offered in evidence certain papers purporting

to be the originals in the matter of a pension the respondent
was receiving for infirmities resulting from his service in the
United States army in the Philippine Islands. They were
first offered in an unopened package. The court observed
that they were offered as a mass; that not being advised as
to what they contained, he would sustain the objection to
their being admitted in evidence. Later one of appellant's
counsel addressing the court said: "Of this mass . . .
we offer the last three pages . . . being the medical ex-
amination and physician's certificate made in February, 1901,
showing the condition of the man at that time." This case
was tried in April of this year, more than eight years after
the date of the report sought to be introduced in evidence.
The offer was denied on the ground that the papers were not
properly identified. The witness stated that he had received
them by mail and believed them to be the original papers.
We think there was no error in the ruling of the court. It
is at least doubtful whether the papers were sufficiently iden-
tified. They were inadmissible on at least two other grounds,
(1) they were too remote in point of time, and (2) the certifi-
cate of the medical examiner was hearsay. *Connecticut
Mutual Life Ins. Co. v. Schwenk*, 94 U. S. 593, 24 L. Ed.
299.

Certain hypothetical questions were propounded upon
which error is assigned. These were based upon facts which
the evidence tended to prove, and as such were proper. *State
v. Underwood*, 35 Wash. 558, 77 Pac. 863; *State v. Alcorn*,
7 Idaho 599, 64 Pac. 1014, 97 Am. St. 252.

Prior to the trial the court appointed certain physicians to
examine the injuries sustained by the respondent, and they
examined him. During the trial the appellant asked the
court to require the respondent to submit to a further ex-
amination by one of these physicians. The court refused to
do so, and the ruling is assigned as error. The authorities
cited are cases where there had been no previous examina-
tion. There was no error in this ruling.

The respondent was permitted to testify that Dr. Senn examined him and advised him that his bowel trouble was caused by yellow fever. The evidence shows that this was in 1900. This evidence was immaterial, but it does not follow that its admission was error. Counsel for appellant cross-examined at length as to how the operation in 1900 should have been performed. These matters were not a part of the case. The ultimate questions for the jury to determine were, (1) was the negligence of the city the proximate cause of the immediate injury, and (2) the damages sustained thereby by the respondent. Who advised or performed the operation in 1900, and whether it was done in the most approved way, were collateral to the main inquiry. A case will only be reversed for prejudicial error. *Hoseth v. Preston Mill Co.,* 55 Wash. 416, 104 Pac. 612.

The contention that the court commented on the facts is without merit. The court may, in ruling upon an objection interposed by counsel during the progress of the trial, or during the argument of counsel to the jury, assign a reason for a ruling without violating the provision of the constitution forbidding the court to comment on the facts.

It is urged that the court committed error in refusing to instruct the jury that in determining the question of the respondent's negligence it should take into consideration whether or not he was intoxicated. The evidence shows that the injury was sustained between nine and ten o'clock in the evening. The only evidence as to his intoxication is the testimony of one witness that he saw the respondent at five or six o'clock in the afternoon, the day of the accident; that he was then "about half jagged." He further said: "I do not know whether you would call it drunk or not." If the witness who saw the respondent did not know whether he was drunk or sober, the jury could not be given an instruction from which it might guess that he may have been drunk. The testimony that "he was about half jagged" is not only indefinite, but is too remote in point of time to require an in-

struction covering the respondent's state of sobriety. The law deals with reasonable probabilities. Instructions framed to cover vague and possible conditions arising from the evidence would tend to confuse and obscure the issues.

The other errors assigned by the appellant do not require separate consideration. We have examined the instructions given and those requested and refused, and we think, without specially setting out the instructions given, that they fully presented to the jury the general controlling principles of law governing the case. The jury were instructed that it was the duty of the city to keep its streets in a reasonably safe condition for travel; that if it had done so there was no liability; that a person traveling by night is required to use greater care than a traveler by day; that in determining the question of contributory negligence they should consider the condition of health and soundness of body of the respondent; that if the traveler has any physical infirmities he should exercise care commensurate with those infirmities; that it was for them to determine whether it was negligence for the respondent to have ridden his bicycle without a light on the night in question. The law as to whether the city had notice of the obstruction in the street was also fully covered by the instructions. The judgment will therefore be affirmed.

Rudkin, C. J., Chadwick, and Fullerton, JJ., concur.