[No. 19301. Department Two. July 9, 1925.]

T. S. McEACHRAN, *Respondent*, v. ROTHSCHILD & COMPANY, INCORPORATED, *Appellant.*[1]

MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION ACT—SCOPE—MARITIME SERVICE—STATUTES—CONSTRUCTION. Rem. Comp. Stat., § 7694, providing that the workmen's compensation act shall apply to those engaged in maritime service only where their payroll can be clearly separable from the payroll of workmen who may enforce liability in the courts of admiralty, does not authorize the splitting of the payroll of a stevedore, engaged alternatively on shore and on board ship, or the keeping of two payrolls for one person so employed; but such an employee does not come within the provisions of the workmen's compensation act, and may maintain an action at law for injuries sustained in his employment through the negligence of the master (Modified on Rehearing).

[1]Reported in 237 Pac. 711; 241 Pac. 969.

SAME (76)—NEGLIGENCE—DANGEROUS PLACES—DUTY TO WARN—
EVIDENCE—SUFFICIENCY. The negligence of a signal man, whose
duty it was to see that a sling load of lumber was free, is a question
for the jury, where he signaled for a strain on the fall line while
the load was obstructed so that it suddenly loosened and hurled a
timber against a workman, checking up the load, who was not in
a position to know of the danger unless warned thereof.

SAME (163)—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. The
contributory negligence of one employed as a checker in loading a
ship, is for the jury, where a timber was hurled against him while
he was stationed at a place which was safe under all ordinary and
usual conditions, and was not bound to anticipate that he would
not be warned.

TRIAL (101)—INSTRUCTIONS—REQUESTS. Error can not be assigned
upon the failure to give instructions of doubtful applicability, where
the instructions as a whole correctly cover the whole case.

NEGLIGENCE (44)—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS. An
instruction that contributory negligence must be proved by the per-
son alleging it is not prejudicially erroneous, when considered in
connection with another instruction properly stating the duty of the
defendant to prove the allegations of his affirmative defense by a
fair preponderance of the evidence.

EVIDENCE (213, 214)—OPINION EVIDENCE—EXAMINATION OF EX-
PERTS—HYPOTHETICAL QUESTIONS. In the absence of an objection on
the ground of incompleteness, prejudicial error can not be assigned
on allowing a hypothetical question based on the testimony of the
party offering it, although its recitals were not as full as they
could have been made; especially where appellant availed himself
of his privilege of calling attention thereto, and of asking an opinion
on further assumption of facts indicated by the evidence.

DAMAGES (80)—PERSONAL INJURIES—EXCESSIVE VERDICT. A ver-
dict for $35,000 for personal injuries will not be held excessive,
where plaintiff after the accident developed a "heart-block" from
which he suffered fainting spells and could not safely walk the streets
without an attendant, and was in a serious condition, without hope
of actual cure or much alleviation (MACKINTOSH, J., dissenting).

ON REHEARING.

MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION ACT—
SCOPE—MARITIME SERVICE—STATUTES—CONSTRUCTION. Rem. Comp.
Stat., § 7694, providing that the workmen's compensation act shall
apply to those engaged in maritime service only where their payroll
can be clearly separable from the payroll of workmen who may en-
force liability in the courts of admiralty, does not authorize the
splitting of the payroll of a stevedore, engaged alternatively on shore
and on board ship, or the keeping of two payrolls for one person

so employed, where his payroll for work on the vessel and on shore
was not clearly separable, and it was impracticable to keep an
accurate check on his time.

. Appeal from a judgment of the superior court for
Pierce county, Clifford, J., entered December 9, 1924,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action for personal injuries sustained
by a lumber checker while assisting in loading a vessel.
Affirmed.

*William H. Gorham*, for appellant.

· *Lyle, Henderson & Carnahan* and *Rummens & Grif-
fin*, for respondent.

*Huffer, Hayden, Merritt, Summers & Bucey, Guie
& Halverstadt, Battle, Hulbert, Gates & Helsell, Hay-
den, Langhorne & Metzger, Edward G. Dobrin*, and
*Theodore B. Bruener, amici curiae.*

FULLERTON, J.—This is an appeal from a judgment
entered in favor of the respondent, McEachran, against
the appellant, Rothschild & Company, Incorporated,
in an action brought to recover for personal injuries.

To an understanding of the controversy, a general
outline of the facts is necessary. The steamship Italy
Maru is employed by its charterers in the lumber car-
rying trade between the ports of the state of Wash-
ington and the ports of Japan and China. Sometime
prior to February 11, 1922, the vessel was brought to
the dock of the Port of Tacoma for the purpose of
taking on a cargo of lumber. The lumber consigned
for transport on the vessel belonged to different con-
signors and was consigned to different ports of the
countries named. To facilitate the discharge of the
cargo when the vessel reached the port to which a par-
ticular part of the cargo was consigned, and that the
vessel might not be rendered unseaworthy when a part

of the cargo was discharged, it was necessary to distribute over the vessel the lumber of each several consignor, and necessary that each consignment have upon it a distinguishing mark. The charterers employed the appellant, a stevedoring corporation, to load the lumber onto the vessel. They also employed the respondent as a checker; his duties being to assist the person acting as supercargo to keep track of the lumber as it was stored in the various compartments of the vessel. In the performance of his duties, the respondent was required to alternate between the vessel and the dock, having no fixed times at either place, the exigency of the particular duty he was required at the moment to perform governing his movements.

The respondent received the injury for which he recovered while on a railroad car spotted on the dock alongside the vessel. He was on the car for the purpose of counting and marking pieces of timber then being carried in sling loads from the car to the vessel. A loading boom had been extended from the vessel over the middle of the car, and a fall line was stretched from a winch on the vessel to the bed of the car, through blocks, one of which was at the upper end of the boom. After a sling load was made up, the line was hitched to the sling and the load hoisted to the end of the boom by power from the winch, from whence, by aid of another winch, it was carried over a hatchway of the vessel and lowered into the hold. The particular load causing the injury was taken from an end of the car. This caused a diagonal pull on the fall line. After the load had been prepared in the usual manner, the fall line hitched thereto, and the respondent had completed his counting and marking, a signal was given the winchman to hoist the load. The respondent in the meantime walked to the opposite end of the car.

He had no more than reached it and turned around when he was struck with great force by a flying piece of timber. It seems that the load was not free to move when the strain was put upon the line by the winchman, a fact not observed by the employee of the appellant whose duty it was to watch it and see that it was free from obstruction. As the winchman increased the strain upon it, it loosened suddenly and swung rapidly in the direction of the pull. In so swinging it struck a piece of timber, hurling it against the respondent.

The appellant's first assignment is that the court erred in refusing to sustain some one or more of its challenges questioning the respondent's right of recovery. Under this head it contends for a number of distinct propositions, the first of which is that the respondent has no right of action against the appellant because of the provisions of the workmen's compensation act. In noticing the contention of the appellant under this head, it is unnecessary to set forth in detail the specific provisions of the act mentioned. It is sufficient to say that it abolishes the common-law remedy of an employee against his employer for an injury received in a hazardous employment, and relegates the employee to another source for relief. In so far as the exclusive jurisdiction of the state over such employments is concerned, the act is effective to accomplish its purpose; it has withstood all attacks made upon it in both the state and the Federal courts. But at the time of the enactment of the statute there existed within the state, and now exist therein, hazardous employments over which the state has not exclusive jurisdiction; employments over which a paramount jurisdiction has control and over which it has enacted its own laws governing the rights and remedies of employer and employee en-

gaged therein. The most dominant of these are railroad companies engaged in both interstate and intrastate commerce, and employments of a maritime nature. Concerning the first, the state law can operate only where the business is wholly intrastate; and concerning the second, only where the work is performed entirely upon the shore.

There is, however, an intermediate class of employees whose status is not definitely determined by the statute; such as railroad employees whose work is of both an interstate and intrastate nature, and employees in maritime pursuits whose work requires them to alternate between the shore and navigable waters. As to the first of these, this court has held that they are not within the purview of the act (*State v. Postal Telegraph-Cable Co.*, 101 Wash. 630, 172 Pac. 902; *Spokane & Inland Empire R. Co. v. Wilson*, 104 Wash. 171, 176 Pac. 34); and as to the second, it has held that they are within the purview of the act only in so far as their work was performed wholly upon the shore. *Puget Sound Bridge & Dredging Co. v. Industrial Ins. Comm.*, 105 Wash. 272, 177 Pac. 788. The indefinite nature of the status of these employees led to a number of amendments to the original act, the last of which, commonly known as the railroad and maritime amendments, was enacted at the legislative session of 1919 (Laws of 1919, p. 134; Rem. Comp. Stat., §§ 7693, 7694, 7695). These read as follows (quoting from the compiled statutes):

"§ 7693. Inasmuch as it has proved impossible in the case of employees engaged in maintenance and operation of railways doing interstate, foreign and intrastate commerce, and in maintenance and construction of their equipment, to separate and distinguish the connection of such employees with interstate or foreign commerce from their connection with intrastate

commerce, and such employees have, in fact, received no compensation under this act, the provisions of this act shall not apply to work performed in the maintenance and operation of such railroads or performed in the maintenance or construction of their equipment, or to the employees engaged therein, but nothing herein shall be construed as excluding from the operation of this act railroad construction work, or the employees engaged thereon: Provided, however, that common carriers by railroad engaged in such interstate or foreign commerce and in intrastate commerce shall, in all cases where liability does not exist under the laws of the United States, be liable in damages to any person suffering injury while employed by such carrier, or in case of the death of such employee to his surviving wife and child, or children, and if no surviving wife and child or children, then to the parents, sisters, or minor brothers, residents of the United States at the time of such death, and who were dependent upon such deceased for support, to the same extent and subject to the same limitations as the liability now existing, or hereafter created, by the laws of the United States governing recoveries by railroad employees injured while engaged in interstate commerce: . . .''

''§ 7694. The provisions of this act shall apply to employers and workmen engaged in maritime works or occupations only in cases where and to the extent that the pay-roll of such workmen may and shall be clearly separable and distinguishable from the payroll of workmen employed under circumstances in which a liability now exists or may hereafter exist in the courts of admiralty of the United States: Provided, that as to workmen whose payroll is not so clearly separable and distinguishable, the employer shall in all cases be liable in damages for injuries to the same extent and under the same circumstances as is specified in the case of railroads in the first proviso of section 7693.''

''§ 7695. The provisions of this act shall apply to employers and workmen (other than railways and their workmen) engaged in intrastate and also in interstate or foreign commerce, for whom a rule of liability or method of compensation now exists under or may here-

after be establishd by the congress of the United States, only to the extent that the pay-roll of such workmen may and shall be clearly separable and distinguishable from the pay-roll of workmen engaged in interstate or foreign commerce: Provided, that as to workmen whose pay-roll is not so clearly separable and distinguishable, the employer shall in all cases be liable in damages for injuries to the same extent and under the same circumstances as is specified in the case of railroads in the first proviso of section 7693.''

In the case before us, we are, of course, primarily concerned with the meaning of the second of the sections quoted. It seems to have been the interpretation of the court below that the compensation act would apply to a workman whose work took him alternately between the shore and the navigable water, if the payroll of such workman while on shore was clearly separable and distinguishable from his payroll while working on navigable water, and it left it for the jury to say whether the payroll of the respondent in this instance while working on shore was so clearly separable and distinguishable from his payroll while working on the vessel involved in the controversy. Indeed, we are advised by the record that this is the construction put upon the act by the board whose duty it is to enforce the provisions of the workmen's compensation act; although, as we are further advised, that board does not require the time of the work to be kept with accuracy, but compromises ''on a fifty-fifty basis''; meaning, evidently, that it is fair to assume that such a workman is engaged, on an average, one-half of his time on shore and one-half on navigable waters.

But we cannot think the foregoing a correct interpretation of the act. Its language, it must be conceded, is obscure when considered without reference to extrinsic matters, but much of this obscurity vanishes when the language is considered with reference to the

known facts to which it was intended to apply. It is a matter of common knowledge, and here shown by the record, that, in loading or unloading a freight-carrying vessel, certain of the workmen engaged therein work wholly upon the shore and that certain others work wholly upon the vessel. It is settled law that the first are amenable to state legislation, and for injuries suffered while so engaged must seek compensation in the remedy the state affords. It is equally well settled law that the second class is not so amenable, that their work is wholly maritime, and the remedy afforded them for injuries is that provided by the law maritime. As to these two classes of workmen, the payroll of the first class, in the language of the statute, "may and shall be clearly separable and distinguishable from the payroll of workmen employed under circumstances in which liability now exists, or which may hereafter exist, in the courts of admiralty of the United States." But it is manifest that workmen of the third or intermediate class, those whose work partakes of the nature of both of the other classes, are not thus clearly separable and distinguishable from the payroll of the workmen for whose injuries the remedy exists in the courts of admiralty. On the contrary, for certain of the work the payroll must from the nature of the case be included therein. The statute does not provide for a splitting of time, nor does it provide for a separate payroll for each individual. The language is general. If the payroll of the particular workman is not clearly separable or distinguishable from the payroll of the maritime class of workers, he must be included with them. Moreover, the statute had a purpose. This purpose was to fix with definiteness the status of the several workmen engaged in enterprises of this kind. Since for want of power it could not relegate workmen engaged in work

of this class to its compensation act, it had either to provide for a splitting of time, or exempt the workman entirely. The language it used in expressing its purpose, when considered with the evil it sought to remedy, convinces us that it chose the latter alternative; that it meant to relegate workmen employed as the respondent was employed to the remedy afforded by the maritime law for any injury received during the course of the employment.

The second contention under this head is that the evidence is insufficient to justify a finding of negligence on the part of the appellant. But, in our opinion, it is sufficient in this regard. The cause of the accident and manner in which it occurred, we have hereinbefore stated. To put a strain on the fall line with the sling load lodged in its then position, considered in connection with the surroundings, made the question of negligence one for the jury. It must be remembered that the respondent was not the fellow servant of the workmen doing the actual work of loading the vessel. He was not in the employ of the same master, nor was he engaged in the actual work of loading. Nor was he a trespasser on the car then being unloaded. He was there in the performance of work which made it necessary for him to be there, and his presence at the place was with the implied, if not the actual, consent of the appellant. The appellant, therefore, owed the duty of exercising reasonable care for his safety, its servants were its agents for that purpose, and their neglect was the neglect of the appellant. He was not in a situation where he would know the load had become lodged, and if he knew generally the dangers attending a strain on the load in its then condition, he did not know that the danger was then imminent. It was the duty of the

appellant to warn him of the fact, and the neglect of that duty was negligence..

. The next contention is that the respondent was guilty of contributory negligence, but this also was at most a question for the jury, and the court submitted the question to them. The place at which he stationed himself was safe under all ordinary and usual conditions, and he was not bound, as matter of law, to anticipate that he would not be warned of the unusual.

Of the errors thought to require a new trial, the first is the refusal of the court to give certain requested instructions. These are long, and, as they apply to the facts of the particular case, it would add nothing to the general stock of knowledge to set them forth and discuss them minutely. It is sufficient to say that some of them are of doubtful applicability, and that in so far as they are material they are covered by the instructions given by the court. Furthermore, we have examined the instructions given as a whole, and find them clear and concise, that they cover all of the issues, and that they contain an impartial statement of the law applicable to all of the issues. In our opinion, the appellant did not suffer for want of sufficient instructions to the jury.

. The court gave the following instruction, to which exception was taken:

"Contributory negligence is the want of ordinary care on the part of a plaintiff who is seeking to recover from a defendant for injury or loss and must be such negligence as contributes to the happening of the injury or loss, and it must be proved by the one alleging contributory negligence."

It is objected to this that it assumes that contributory negligence must be established by evidence introduced by the party pleading it, whereas the rule is that contributory negligence may be established by evidence

introduced by either party to the cause, the only limitation being that the evidence must preponderate in favor of the party who relies upon the plea. The same question was before us in the recent case of *Brammer v. Percival,* 133 Wash. 126, 233 Pac. 311, wherein we held that the giving of an instruction couched in, the exact language of this one did not constitute reversible error. We are satisfied with the rule there announced and think we need not add to the reasons there given for the conclusion. It is proper, however, to say that in this case the court also gave the additional instruction therein quoted.

Error is assigned on the refusal of the court to sustain the objection of the appellant to a hypothetical question propounded by the respondent to one of his expert medical witnesses. The objection was based on the ground that the facts assumed in the question were not in harmony with the facts shown by the evidence. The question propounded, it may be conceded, was not in its recitals as full as it could have been made, since it contained references to the testimony of other witnesses and references to matters which came to the knowledge of the witness from his own examinations and observations, but we cannot conclude it reversible error nevertheless. It was not objected to on the ground that it was not complete in itself, and reading it in the light of the references, it was a fair summary of the facts which the respondent's testimony tended to prove. Hypothetical questions may properly be based on the testimony of the party proposing them. *State v. Underwood,* 35 Wash. 558, 77 Pac. 863; *Hanstad v. Canadian Pac. R. Co.,* 44 Wash. 505, 87 Pac. 832; *Dunkin v. Hoquiam,* 56 Wash. 47, 105 Pac. 149; *Griggs v. Wayne,* 100 Wash. 459, 171 Pac. 230.

Moreover, as was noted in the last cited case, the appellant was at liberty to bring to the attention of the

witness the evidence in the record which opposed the evidence on which the respondent relied and take his opinion on the assumption that the facts are as such testimony indicated, or inquire whether his opinion would be the same were the facts as such testimony tended to show. Ordinarily, this is the only remedy where there is a dispute in the testimony, and an examination of the record shows that. the appellant in this instance availed itself of the privilege.

The verdict of the jury was for $35,000, and for this sum a judgment was entered. The appellant complains that the amount awarded is excessive. The respondent was unquestionably severely injured by the accident, and some of the injuries, apart from the one presently to be mentioned, are of a permanent character. But they are not of such a character as to prohibit the respondent from engaging in all gainful callings, and do not, in our opinion, justify the very large verdict which the jury returned. But the evidence shows that, in the November following the February in which the accident happened, the respondent developed a heart-block which possibly utterly incapacitates him from pursuing any gainful calling. A heart-block is described as a condition in which the ventricular systole does not always follow the auricular; every other beat may be lost, or every third, or the failure of the ventricular may be irregular. It was given in testimony by the medical witnesses that, while the pulsation of the heart in normal persons ranged between 60 and 80 to the minute, the pulsations of the respondent's heart ranged from 26 to 32. He is subject to fainting spells, and cannot safely walk the streets without an attendant. All of the medical witnesses agreed that the respondent's condition was serious, lending no hope of actual cure and not much of alleviation, and all agreed that the

condition either could be caused, or, if latent, could be rendered acute by the injury.

In the light of these conditions, we do not feel that we would be warranted in interfering with the verdict. It is indeed large, but the right of trial by jury is a mandate of the constitution, and, while the court may, in the exercise of its discretion, if it deems the verdict excessive, or that it was rendered under the influence of passion and prejudice, set it aside and grant a new trial, or, what is the same thing, give the plaintiff an opportunity to accept a lesser sum than the amount of the verdict or submit to a new trial, it cannot of itself determine the amount of the recovery. A jury, therefore, must be the final arbiter, and we feel that there is but little reason for concluding that another jury would return a lesser amount, and that it would thus be an abuse of discretion to direct a new trial for this cause.

The judgment is affirmed.

Tolman, C. J., Holcomb, and Mitchell, JJ., concur.

Mackintosh, J. (dissenting)—The verdict was excessive, and from that portion of the opinion denying a reduction, I withhold my assent.

## On Rehearing.

[*En Banc.*  December 22, 1925.]

Holcomb, J.—This case has been reheard and re-examined.

As to the amount of damages allowed respondent, which was very large and gave us much concern, we have carefully re-examined that question. In view of the great pain and suffering caused respondent by his injuries, which continued up to the time of his trial to some degree; his serious physical condition, which,

according to the evidence, will be permanent; his total incapacity to work; the necessity of having an attendant constantly with him; and his liability of death at any time as the result of such injuries; we cannot see any legal reason for reducing the amount of damages, or requiring respondent to submit to a lesser amount or a new trial. The decision will therefore stand as to that.

We have become convinced, however, that our decision in some other respects was erroneous. By inadvertence in one place in the opinion it was said "that it (the 1919 amendment) meant to relegate workmen employed as respondent was employed to the remedy afforded by the maritime law for any injury received during the course of the employment." This, of course, was inadvertent in alluding only to the maritime law. What was meant by the writer of the opinion and the court was not that the workman was relegated to the maritime law exclusively; for as to some injuries, those received on shore, even though his time could not be segregated under the 1919 maritime amendment, his remedy would not be under the maritime law, but under the common law, while those received on navigable waters would, of course, come under the maritime law.

It was also stated in the former opinion, alluding to the practice of the board having in charge the workmen's compensation awards,

"That board does not require the time of the workmen to be kept with accuracy, but compromises 'on a fifty-fifty basis;' meaning, evidently, that it is fair to assume that such workman is engaged on an average, one-half of his time on shore, and one-half on navigable waters."

It was further stated that,

"The statute does not provide for a splitting of time, nor does it provide for a separate payroll for each in-

dividual. The language is general. If the payroll of the particular workman is not clearly separable or distinguishable from the payroll of the maritime class of workers, he must be included with them.''

We are convinced, by the arguments on rehearing on behalf of appellant, and also by several of *Amici Curiae* who presented arguments, that this part of the decision is inconsistent with a former decision; *Puget Sound Bridge & Dredging Co. v. Industrial Insurance Commission,* 105 Wash. 272, 177 Pac. 788, and with the language and spirit of the 1919 amendment. The amendment was enacted shortly after the decision in the above cited case, where we held that workmen employed solely upon land were within the operation of the workmen's compensation act, and workmen engaged both upon land and navigable water were not within the operation of the act while working upon navigable water. The 1919 amendment clearly provides, and was intended to provide, that, where the payroll can be clearly separated and distinguished, that substantial part representing work performed upon land shall be under the provisions of the act, while that not clearly separable and distinguishable shall fall under other remedies authorized by law. In other words, as the act says, *"to the extent* that the payroll of such workman may and shall be clearly separable and distinguishable, etc.'' (not on a fifty-fifty basis), but to *any extent* that it is clearly separable and distinguishable, the payroll shall be so separated and distinguished. Under that provision there may be cases where the payroll is clearly separable and distinguishable as to one-tenth of the workman's time, and not simply and arbitrarily fifty-fifty as was said to be the rule by the compensation department. In the case at bar, the payroll was

not clearly separable and distinguishable, and we adhere to our decision in that respect.

If it is practical to keep an accurate check of the time and payroll of a stevedore who works alternately on shore and on navigable water, that must be done under the 1919 amendment. The stevedore would then certainly come within the terms of the act while working on shore. He would be entitled to the benefits of his other legal remedies while working on clearly separable and distinguishable work on ship board.

In the foregoing respects, the decision of the Department is modified; in all other respects, affirmed.

TOLMAN, C.J., ASKREN, MACKINTOSH, MAIN, MITCHELL, and PARKER, JJ., concur.