[No. 25099. *En Banc.* November 22, 1934.]

ROSE A. GASKILL, *as Administratrix, Respondent,* v. ARCHIBALD R. AMADON *et al., Appellants,* JAMES W. BARRETT *et al., Defendants.*[1]

[1]Reported in 38 P. (2d) 229.

376

*John F. McCarthy, Charles D. McCarthy,* and *Robert T. Mautz,* for appellants.

*Cecil C. Hallin, H. E. McKenney,* and *Edgar P. Reid,* for respondent.

HOLCOMB, J.—This action was brought by respondent as the administratrix of her deceased husband, Harry O. Gaskill, against the owners and drivers of two cars which had been involved in an automobile collision causing the death of decedent. The negligence alleged against the Barretts, as the owners of a light Ford delivery truck commonly used for the delivery of bakery products, was that they entrusted the driving of the car on the day in question to their son Donald Barrett, who was then a few days less than fourteen years of age; that the brakes were very defective and that they had almost no lining at all; and that the boy drove in a wild and reckless manner. The only negli-gence alleged against the Amadons was in driving at a greatly excessive rate of speed across an intersection

on which the view was obstructed on the side from which the Barrett car approached.

The jury found against both parties defendant, upon which, after motions for judgment *non obstante veredicto* or for a new trial had been made by both parties defendant and denied, the judgment became final as to the Barretts, since they did not appeal.

The Amadons having appealed, the chief question to determine as to them is whether or not there was any evidence to show excessive speed on the part of the driver of the car, the husband, who was alone in the car. We are not further concerned with the liability of the Barretts for negligence, or as to the contributory negligence of respondent's decedent as to them. We shall discuss the errors assigned by appellants somewhat out of the order in which they were argued, as being a more logical way to dispose of them.

■ Appellants alleged contributory negligence on the part of decedent in having accepted passage in the Barrett car with an unlawful, as well as an incompetent driver, which was an affirmative defense necessary to be proven from all the facts and circumstances in the case preponderantly in favor of the party who so alleges and relies thereon. *McEachran v. Rothschild & Co.*, 135 Wash. 260, 237 Pac. 711, 241 Pac. 969. See, also, *Brammer v. Percival,* 133 Wash. 126, 233 Pac. 311.

And to overcome the presumption of due care on the part of one killed in an accident, there must be some preponderant evidence against it. *Reinhart v. Oregon-Washington Railroad & Navigation Co.*, 174 Wash. 320, 24 P. (2d) 615.

It becomes necessary to determine whether or not there was such contributory negligence, and also whether any negligence as alleged, on the part of Amadon, was shown.

The collision occurred a little before eight o'clock in the morning of December 10, 1932, in the intersection of Seventeenth avenue and Larch street in Longview. On that morning, the weather was bright and clear, but cold, there having been a heavy frost during the night. The pavement was dry. The Barrett boy was driving the light Ford delivery truck southerly along Seventeenth avenue in front of the Monticello hotel, and when he approached the intersection on Seventeenth avenue and Larch street, which intersects Seventeenth at right angles, he looked to the right, but said that he could see nothing, because decedent was sitting forward with his head and shoulders close to the windshield, and his face turned toward the driver of the truck. There was also evidence that the wind shield of the Ford truck was so coated with frost and ice as to render it impossible to see through it.

When the Barrett truck had reached a point just about on a line with the southerly curb line of Larch street if extended, and was almost across the intersection, the collision occurred. Amadon was driving a De Soto sedan eastward on Larch street. The Barrett boy testified that he did not see the Amadon car until just an instant before he struck it, and had no time to even put his foot on the brake before the collision occurred; that he just barely saw the Amadon car as a dark object that shot in front of him. Amadon did not offer himself as a witness in the case, but his answer alleged that he was driving east on Larch street intending to turn to the right on Seventeenth avenue. A witness testified that Amadon told him "he did not see a thing until he crawled out of the car," and "he did not say a word about looking to the left."

It must be apparent that it is a question for the jury to determine that, had Amadon looked to the left, he must have seen the Barrett truck being driven

wildly by the boy into the intersection. The lawful speed of such obstructed intersection was fifteen miles per hour. The force of the impact was so great, accepting the testimony of one of the witnesses for respondent most favorable to her, as was the duty of the trial court and this court in passing upon such questions, as to make the Amadon car travel in a circle about eighty feet, so that it was driving in the same direction it had come from when it came to rest on its right side. The Barrett car proceeded thirty-five or forty feet at somewhat of an angle from the direction at which it had been travelling before it came to rest. The Barrett car struck the Amadon car at an angle of about forty-five degrees, from the rear.

It is true that the Amadon car had the right of way, as it approached the intersection first, over traffic from the left, but when the driver of the Amadon car saw that the driver of the truck on his left did not intend to accord him the right of way, but intended to drive recklessly through the intersection, had he been exercising due care he would have stopped or slowed his car.

The rule laid down in *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533, to the effect that all rights of way are relative and the duty to avoid accidents or collisions at street intersections rests upon both drivers, regarding the negligence of Amadon, applies here.

Appellants contend that the rule laid down in *Breithaupt v. Martin*, 153 Wash. 192, 279 Pac. 568, is controlling in this case. We do not so consider. In that case, there was no question but that the drivers of both cars were simultaneously approaching the intersection. However, we said:

"The question of the duty of the driver of a car in appellant's situation, who, in sufficient time to protect

himself, sees an automobile approaching from his left, the driver of which manifestly is not going to accord him the right of way, does not enter into the consideration of this case.''

■ The impact and violence of a collision may be taken into consideration in determining the rate of speed. *Copeland v. North Coast Transportation Co.,* 169 Wash. 84, 13 P. (2d) 65, and cases cited.

While there was no direct evidence of the rate of speed at which appellants' car was being driven, yet the fact that it ran into the intersection and that the collision occurred therein causing such damage, is some evidence from which the jury might infer excessive speed under the circumstances existing at that time and place. *Hunter v. Lincoln Stages, Inc.,* 161 Wash. 634, 297 Pac. 179.

■ Amadon was not called as a witness, which gives rise to the inference that, if he had been called and testified truthfully, his contention would not have been aided thereby. *Glasgow v. Nicholls,* 124 Wash. 281, 214 Pac. 165, 35 A. L. R. 419; *Bank of Chewelah v. Carter,* 165 Wash. 663, 5 P. (2d) 1029; 22 C. J. 121 and 122; 10 R. C. L. 884.

We conclude that it was a question of fact for the jury to determine as to the negligence of appellants under the facts and circumstances shown in this case.

It was also a question for the jury to decide as to the contributory negligence of deceased.

■ The error apparently mostly relied upon by appellants is in denying their motion for a mistrial, which is their first complaint. This is based upon the supposed misconduct of counsel for respondent in intruding the matter of insurance into the trial of the case.

A witness called by respondent, who was, and for

about fifteen years had been, a traffic officer of Longview, investigated the accident a few minutes after it had happened. He testified to the location where the collision occurred and to a diagram that he had made himself at the time, so as to illustrate his testimony. On cross-examination by counsel for appellant, he was shown a photograph, which was at the time marked with a defendants' identification number, and testified that he was present when the picture was taken. The picture is a very small, dim picture, almost indistinguishable as to any of the three men shown in it. He testified that the man numbered ''3'' in the photograph was himself, that a point numbered ''1'' in the picture represented the point of collision, and that the point numbered ''2'' represented where the Ford truck was, upside down. He also said that the picture was taken a week after the accident, or possibly longer; that he was the one who posted the various men in the picture and who fixed them at the points indicated therein.

Since this picture was offered by appellant, counsel for respondent, who apparently had no previous knowledge of it, also examined the police officer on re-direct examination, asking what the objects represented in the picture were, and who the men were; upon which the witness responded that the first one was Bill Martin, the insurance man; the second one, Archie Amadon, defendant; and the third, himself. Counsel for respondent then said that they had no objection to the exhibit, and it was admitted as an exhibit for defendant. Latter, counsel for respondent again examined this witness to ascertain who took the picture, and was told that the witness thought it was the insurance agent, but he did not know his name. The witness thought that he took several pictures and the life insurance company took some. The witness then testified that the picture was taken on the north boundary

of Larch street, and pointed out the spot where the camera-man stood when taking it. He also said, a little later in his testimony, that the insurance man took him out there to take the picture, and that none of counsel for appellant was present.

Immediately upon the conclusion of the testimony of this witness, appellants moved for a mistrial upon the ground that the insurance matter had been deliberately injected into the trial by respondent. The motion was denied, and upon the conclusion of the testimony for defendants, the Barretts, the motion was again made and denied.

Counsel for respondent evidently acted in good faith in examining the witness as to the persons shown in the photograph for the purpose of identification. It was not wilfully or collusively done for the purpose of getting before the jury the matter of insurance. The consensus of our decisions is that, if it is apparent that counsel deliberately sets about, although in an indirect way, to inform the jury that the loss, if any, will fall upon an insurance company instead of the defendant, his conduct will be held prejudicial. The gravamen of the offense is not in the disclosure of a collateral fact, but in the manner of its disclosure, that is, the misconduct of counsel. *Jensen v. Schlenz,* 89 Wash. 268, 154 Pac. 159.

The evidence having been offered by appellant, it was entirely competent for respondent to show, on redirect examination, all of the circumstances under which the photograph was taken, and to identify the objects and individuals therein. The mere fact that it was prejudicial to appellants was their misfortune rather than the fault of respondent. The evidence was not inadmissible for that reason. *Gianini v. Cerini,* 100 Wash. 687, 171 Pac. 1007. See, also, *Brammer v. Lappenbusch,* 176 Wash. 625, 30 P. (2d) 947.

It would have been error to have granted a mistrial.

■ The last contention argued by appellant is that the court erred in giving instruction No. 23, reading:

"You are instructed that in cases of this kind, where a man is killed by negligence of another and is unable to testify himself on account of his death, that there is a presumption of law that the deceased in all things exercised due care, and this presumption cannot be overcome by the testimony of interested witnesses or from inferences that may be drawn by circumstantial facts, but can only be overcome by the testimony of disinterested witnesses; and in the absence of any testimony by the disinterested witnesses to overcome said presumption, the jury are justified in believing that the deceased exercised due care."

The contention of appellant is that the trial court, by this instruction, took from the jury, as a question of fact, the question of contributory negligence on the part of decedent.

The only exception to this instruction taken by appellants was as follows:

" . . . on the ground and for the reason that said instruction does not correctly state the law and on the further ground that it has no application to this case as far as these defendants are concerned."

Rule of Practice VI, Rem. Rev. Stat., § 308-6 [P. C. § 8676-9], requires that exceptions to instructions shall be sufficiently specific to apprise the trial judge of the points of law or questions of fact in dispute.

There was no intimation in the exception taken that the entire question of contributory negligence had been eliminated from the consideration of the jury as to these appellants. *Davis v. North Coast Transportation Co.,* 160 Wash. 576, 295 Pac. 921; *Slattery v. Seattle,* 169 Wash. 144, 13 P. (2d) 464; *State v. Mooney,* 170 Wash. 260, 16 P. (2d) 455; *Drainage Dist.*

*No. 2 v. Everett,* 171 Wash. 471, 18 P. (2d) 53, 88 A. L. R. 123.

Finding no reversible error in the record, the judgment must be, and is, affirmed.

TOLMAN, GERAGHTY, MILLARD, and MITCHELL, JJ., concur.

BLAKE, J. (dissenting)—I dissent. The inference, "that, had Amadon looked to the left, he must have seen the Barrett truck being driven wildly into the intersection," seems to me to be justified neither by the law nor the evidence. Amadon had the right of way. The physical facts show that he was not only in the intersection first, but that he was struck in the rear by the vehicle which should have yielded the right of way. Amadon had a right to assume that Barrett would not only yield the right of way, but that he would enter the intersection at a lawful rate of speed. There being no substantial evidence of negligence on the part of Amadon, the action against him should have been dismissed.

BEALS, C. J., MAIN, and STEINERT, JJ., concur with BLAKE, J.